Tiffany THOMAS, a minor by her father Gregory THOMAS, Carl G. Casey, a minor by his mother Virgil M. Casey, et al., Plaintiffs–Appellants,

v.

R.G. ROBERTS, individually and in her official capacity as Assistant Principal, West Clayton Elementary School, Zannie Billingslea, et al., Defendants–Appellees.

No. 00–11361.

United States Court of Appeals, Eleventh Circuit.

March 10, 2003.

Gerald R. Weber, American Civil Liberties Union Foundation, Michael R. Hauptman, Atlanta, GA, Torin D. Togut, Vermont Protection & Advocacy, Barre, VT, Robert Lo–Pci Tsai, ACLU, University of Oregon School of Law, Eugene, OR, for Plaintiffs–Appellants.

Debra A. Golymbieski, Decatur, GA, Jack Reynolds Hancock, Brian Richard Dempsey, Hancock, Story & Dempsey, LLC, Forest Park, GA, Don R. Foster, Foster & Foster, P.C., Jonesboro, GA, J. Stanley Hawkins, Gary M. Sams, Weekes & Candler, Decatur, GA, Roger Scott Sumrall, Beth W. Kanik, Hall, Booth, Smith & Slover, P.C., Laura Louise Lones, Staff Attorney's Office, Atlanta, GA, Robert E. Wilson, Wilson, Morton & Downs, L.L.C., Decatur, GA, for Defendants–Appellees.

ON REMAND FROM THE UNITED STATES SUPREME COURT

Before BLACK, RONEY and COX, Circuit Judges.

COX, Circuit Judge:

This case is before us on remand from the Supreme Court for reconsideration in light of the Court's decision in Hope v. Pelzer, 536 U.S. 730, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002). This case involves a 42 U.S.C. § 1983 action brought by thirteen elementary school students ("Plaintiffs") against Tracey Morgan, their teacher; Assistant Principal R.G. Roberts; Zannie Billingslea, a police officer assigned to the school; Clayton County, Georgia; and the Clayton County School District. The students contend that Roberts, Morgan, and Billingslea ("Defendants") subjected them to "strip searches," thereby violating their Fourth Amendment rights. The district court found the searches unconstitutional, but granted summary judgment in favor of all of the defendants on all claims. On appeal, we held that this mass search, without individualized suspicion, was unreasonable and thus a violation of the Fourth Amendment.[1] *Thomas v. Roberts,* 261 F.3d 1160, 1177 (11th Cir. 2001). However, we affirmed the district court's grant of qualified immunity to the individual defendants on the children's claims. *Id.* We also affirmed the district court's grant of summary judgment in favor of the school district and the county and the district court's denial of declaratory and injunctive relief. *Id.* The Supreme Court vacated our prior judgment and remanded the case, instructing us to

---

1. A limited search of one student, Lenard Grace, was found not to be unreasonable, and therefore not a violation of the Fourth Amendment.

reconsider the judgment in light of the Court's decision in *Hope v. Pelzer*. *Thomas v. Roberts*, 536 U.S. 953, 122 S.Ct. 2653, 153 L.Ed.2d 829 (2002).

We asked the parties to file supplemental briefs addressing the issue on remand. All parties have done so. Having considered both the briefs and *Hope*, we conclude that *Hope* does not dictate a change in the outcome of this case. We reinstate our prior decision in its entirety and supplement, by this opinion, our previous discussion of qualified immunity.

This case involved the mass "strip search"[2] of a class of fifth grade students in October 1996.[3] An envelope containing $26 disappeared from Morgan's desk after Morgan saw a student place it on the desk. Morgan went to Roberts and requested permission to search the children for the money. Roberts assented to the search, although she did not participate in the search. The boys were taken into the boys' bathroom in groups of four or five at a time and asked to drop their pants. *Id.* at 1164. Some of the boys dropped both their pants and their underwear. Officer Billingslea, a male, searched the boys: as each boy dropped his pants, Billingslea visually inspected the boys' underwear to ensure that the money was not inside. *Id.* The girls were taken into the girls' bathroom in groups of four or five at a time. Their female teacher, Morgan, then asked the girls to lower their pants and lift their dresses or shirts. *Id.* Most of the girls were asked to lift their bras and expose

their breasts to ensure that the money was not hidden under their bras. *Id.*[4]

Thirteen of the students sued Morgan, Billingslea, Vice Principal Roberts, the school district, and the county alleging, among other things, that the search was a violation of their Fourth Amendment rights and a violation of the Georgia constitution and Georgia statutes. The district court found that the searches were unconstitutional but that defendants Morgan, Roberts, and Billingslea were entitled to qualified immunity. The district court granted summary judgment in favor of the school district and the county, finding that neither entity was responsible for the conduct of Morgan, Roberts and Billingslea. The district court then dismissed the state law claims without prejudice. An appeal followed, and we affirmed.

We consider the Plaintiffs arguments on remand in turn. First, Plaintiffs argue that *New Jersey v. T.L.O.*, 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985), clearly establishes that exceptions to the requirement of individualized suspicion are appropriate only when the privacy interests involved are minimal and when other safeguards ensure personal privacy. Plaintiffs insist that the only "very limited context" in which the Supreme Court has allowed suspicionless searches of students is in the "minimally" intrusive setting of drug testing of voluntary student athletes. *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 115 S.Ct. 2386, 132 L.Ed.2d 564 (1995). Finally, Plaintiffs direct us to Eleventh Circuit caselaw upholding stu-

---

**2.** Even though the students do not contend that they were required to remove all of their clothes, we will use the phrase "strip search" for convenience to refer to all of the searches during which the children were required to remove items of clothing.

**3.** As we noted in our previous decision, Defendants vigorously dispute this version of the facts. However, we must construe the facts in the light most favorable to the nonmoving party. *See, e.g., Korman v. HBC Florida, Inc.*, 182 F.3d 1291, 1293 (11th Cir.1992).

**4.** The facts of the case are set out in fuller detail in our prior opinion. *Thomas v. Roberts*, 261 F.3d 1160 (11th Cir.2001).

dent searches when the school officials had individualized suspicion. Based on these cases, Plaintiffs contend that Defendants had fair warning that particularized suspicion is necessary before the school can "strip search" a student.

Plaintiffs also assert that the Supreme Court reversed this panel's determination that municipal liability did not attach to the Clayton County School District. Because the only issue that *Hope* addresses is the issue of qualified immunity, *Hope* has no bearing on our previous decision concerning the school district's or county's liability. Accordingly, we need not reconsider our conclusion that summary judgment was properly granted in favor of the school district and the county.

■ Defendants argue that, given the fact that the "contours of the right [violated] must be sufficiently clear that a reasonable official would understand that what he is doing violates that right," *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987), there is no caselaw prior to October 1996 that would have fairly and clearly warned Defendants that a mass "strip search" of elementary school students under these circumstances was unconstitutional. At the time the searches took place, Defendants contend, only a very general "reasonableness" standard had been applied to school searches and cases applying the reasonableness standard were too factually distinct from the circumstances presented in this case to give guidance. Finally, Defendants argue that their actions were not such egregious and obvious violations of the law as to fall within the slender category of cases in which the unlawfulness of the conduct is so obviously at the core of what the Fourth Amendment prohibits that clarifying caselaw is unnecessary. *See, United States v. Lanier,* 520 U.S. 259, 117 S.Ct. 1219, 137

L.Ed.2d 432 (1997) ;*Smith v. Mattox,* 127 F.3d 1416 (11th Cir.1997).

*Hope* tells us that the "salient question" in this qualified immunity inquiry is "whether the state of the law [at the time of the action in question] gave [Roberts, Morgan, and Billingslea] fair warning that their alleged [actions were] unconstitutional." 122 S.Ct. at 2516. *Hope* also tells us that the notice to officials must be a "fair *and clear* " warning. *See id.* at 2518, quoting *Lanier,* 520 U.S. at 271, 117 S.Ct. at 1227 (emphasis added). The "clear" requirement stems from the fact that the purpose of qualified immunity is to protect government officials performing discretionary functions from civil liability when their actions violate no "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope,* 122 S.Ct. at 2515 (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). In this circuit, rights are "clearly established" by decisions of the Supreme Court, this court, or the highest court of the state in which the case arose. *Hamilton v. Cannon,* 80 F.3d 1525, 1532 n. 7 (11th Cir.1996). Thus, we turn to the Supreme Court and Eleventh Circuit cases which Plaintiffs have cited.

First, Plaintiffs cite *New Jersey v. T.L.O.,* 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720, arguing that *T.L.O.*'s citations to similar cases from other circuits made it clear that school officials may not search students absent particularized suspicion. Contrary to Plaintiffs' argument, the *T.L.O.* Court refrained from addressing the issue of whether individualized suspicion is required for a school search to be reasonable, and instead adopted a general, two-prong, multi-factor "reasonableness" test which calls for a balancing of students' interests against those of school officials. *Id.* at 341–43, 105 S.Ct. at 742–43. As we

have noted, the *T.L.O.* Court made no "attempt to establish clearly the contours of a Fourth Amendment right as applied to the wide variety of possible school settings different" from those presented by the facts of the *T.L.O.* case. *Jenkins by Hall v. Talladega City Bd. of Educ.,* 115 F.3d 821, 828 (11th Cir.1997) (en banc). *T.L.O.* made clear only that a search of a high school student's purse for cigarettes is reasonable if the student was accused of smoking and then denied the allegation.[5] *T.L.O.,* 469 U.S. at 347, 105 S.Ct. at 745–46.

Plaintiffs appear to argue that *T.L.O.*'s balancing test should have put Defendants on notice that a "strip search" would be unlawful. If the salient question is whether *T.L.O.* gave the defendants "fair warning" that a "strip search" of an elementary school class for missing money would be unconstitutional, then the answer must be "no." *T.L.O.*'s balancing test will, in most instances, call for school officials to speculate as to whether a court applying the balancing test to specific facts would find a search unreasonable. As this court has noted, where the applicable legal standard is a highly general one, such as "reasonableness," preexisting caselaw that has applied general law to specific circumstances will almost always be necessary to draw a line that is capable of giving fair and clear notice that an official's conduct will violate federal law. *Marsh v. Butler County, Ala.,* 268 F.3d 1014, 1031 n. 9 (11th Cir. 2001) (en banc) (citing *Anderson,* 483 U.S. at 641, 107 S.Ct. at 3040) (noting that pertinent qualified immunity question in probable cause case is "fact-specific" question of whether a reasonable official could have believed, in light of clearly established law, that official's behavior was lawful under circumstances). The facts of *T.L.O.* are so different from the facts in this case that *T.L.O.* offers little guidance: Defendants could not have compared their situation with the situation in *T.L.O.* and found that the comparison fairly and clearly warned that a "strip search" of this kind would be unconstitutional.[6]

Plaintiffs also cite to *Vernonia School District 47J v. Acton,* 515 U.S. 646, 115 S.Ct. 2386, 132 L.Ed.2d 564, and contend that the Supreme Court has allowed suspicionless searches only in the limited context of drug testing of high school student athletes. *Vernonia* held that under the circumstances of that case, drug testing of high school students without suspicion was constitutional. 515 U.S. at 665–666, 115 S.Ct. at 2396–2397. Given this holding, it is difficult to imagine how officials reading *Vernonia* would have found themselves fairly warned that a strip search of elementary school students would be unlawful.

Plaintiffs also point us to three Eleventh Circuit cases which they contend gave "fair and clear" notice that the "strip search" in this case violated the Constitution. Plaintiffs first cite *Jenkins by Hall v. Talladega City Board of Education,* 115 F.3d 821, 828 (11th Cir.1997) (en banc). Because *Jenkins* was decided almost one year after the events that gave rise to this action, *Jenkins* could not have given Defendants any kind of warning as to the lawfulness of their actions.

---

**5.** The Court also held that a search for marijuana after finding rolling papers while searching for cigarettes was also reasonable. 469 U.S. at 347, 105 S.Ct. at 745–46.

**6.** As we have noted, public officials "are not obligated to be creative or imaginative in drawing analogies" nor do we require them to "construe general legal formulations that have not once been applied to a specific set of facts by any binding judicial authority." *Jenkins,* 115 F.3d at 827 (citations omitted).

Plaintiffs also assert that *Justice v. City of Peachtree City,* 961 F.2d 188 (11th Cir. 1992), gave fair warning. *Justice* involved two high school students arrested for truancy. *Id.* at 189. Once in police custody, one of the students was strip searched for drugs. *Id.* Because this search took place in police custody and was conducted by law enforcement officers, the applicable law is different from that applicable in the schoolhouse. *Justice* would not give notice about the legal parameters of a "strip search" of students in an elementary school classroom.

Additionally, Plaintiffs appear to argue that *C.B. v. Driscoll,* 82 F.3d 383 (11th Cir.1996), supports the idea that particularized suspicion is necessary before a search of a student is reasonable. In *Driscoll,* a high school student was asked to empty his pockets after the principal received a tip that the student was carrying drugs. *Id.* at 385. Contrary to what Plaintiffs argue, *Driscoll* did not hold that particularized suspicion is a necessary prerequisite to searching a student. The *Driscoll* court found that the tip from a fellow student justified the search of the student, and therefore the search was constitutional. *Id.* at 388. *Driscoll* offers no guidance to officials who need to know whether a search would be constitutional in the absence of a student tip.

■ Finally, Plaintiffs cite to *Wilson v. Layne,* 526 U.S. 603, 617, 119 S.Ct. 1692, 1700, 143 L.Ed.2d 818 (1999). Plaintiffs insist that "consensus or persuasive authority" from other circuits may create clearly established law. Plaintiffs then direct us to six opinions from other circuits that deal with strip searches.[7] As we have

stated, only Supreme Court cases, Eleventh Circuit caselaw, and Georgia Supreme Court caselaw can "clearly establish" law in this circuit. *Hamilton,* 80 F.3d at 1532 n. 1. In *Marsh v. Butler County,* 268 F.3d 1014 (11th Cir.2001) (en banc), we implicitly reaffirmed that position when we stated that we do not understand *Wilson* to have held that a consensus of cases of persuasive authority would be able to establish law clearly. "Each jurisdiction has its own body of law, and splits between jurisdictions on matters of law are not uncommon. We do not expect public officials to sort out the law of every jurisdiction in the country." *Id.* at 1032 n. 10. Hence, Plaintiffs' argument based upon decisions in other circuits is foreclosed by our precedent.

■ Factually similar cases are not *always* necessary to establish that a government actor was on notice that certain conduct is unlawful. If the plaintiff in a § 1983 action can show that "the official's conduct lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of caselaw," then the official is not entitled to qualified immunity. *Mattox,* 127 F.3d at 1419. This exception is a narrow one, applying only when the conduct in question is so egregious that the government actor must be aware that he is acting illegally. *See, e.g., Priester v. City of Riviera Beach,* 208 F.3d 919, 927 (11th Cir.2000) (denying qualified immunity on basis of narrow exception in excessive force case in which defendant police officer "ordered and allowed his dog to attack and bite Plaintiff; threatened to

---

7. Of the six cases Plaintiffs cite, four were decided years after October 1996, the date when the incidents giving rise to this action took place. The two cases decided prior to October 1996 are district court decisions from outside this circuit. We decline to conclude that two district court decisions outside this circuit could fairly and clearly establish the law in this circuit.

kill Plaintiff when Plaintiff kicked the dog in an effort to resist the unprovoked attack; and let the dog attack Plaintiff for at least two minutes"); *Mattox,* 127 F.3d at 1419–20 (declaring that conduct "barely" qualified for narrow exception where police officer broke the arm of an allegedly docile arrestee who had admittedly previously been fleeing). While we have found this "strip search" of the students absent particularized suspicion to be unconstitutional, we do not believe that the search is conduct so egregious that the unconstitutionality of it would be readily apparent to Defendants absent clarifying caselaw. *Mattox,* 127 F.3d at 1419.

In conclusion, while *Hope* admonishes us to be less rigid when evaluating caselaw to determine whether a public official had fair warning that his actions would be unlawful, nothing in *Hope* changes the outcome of this case. The cases that Plaintiffs cite involve facts that are quite different from the circumstances presented here, and these cases would not in 1996 give a school official fair, much less clear, warning that the search conducted here would be unlawful. Furthermore, the search does not rise to a level so egregious as to alert the officials that such conduct is unconstitutional even without caselaw.

By this opinion we supplement the discussion of qualified immunity in our previous opinion. We also reinstate, in its entirety, our previous opinion.

SO ORDERED.