[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-10827
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
Aug. 18, 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 07-00450-CV-FTM-99-DNF

DEBORAH O'DONNELL,

Plaintiff-Appellant,

versus

JOHN DERRIG,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(August 18, 2009)

Before EDMONDSON, PRYOR and KRAVITCH, Circuit Judges.

PER CURIAM:

Plaintiff-Appellant Deborah O'Donnell was arrested on October 2, 2006 by

Defendant-Appellee John Derrig, a police officer for the City of Marco Island, Florida. O'Donnell filed suit against Derrig, alleging three causes of action under 42 U.S.C. § 1983 for violations of her Fourth, Fifth, and Fourteenth Amendment rights. O'Donnell's claims included, <u>inter alia</u>, allegations of warrantless arrest without probable cause, excessive force, unlawful seizure, and deliberate indifference to her medical needs.[1] Following a motion by Derrig, the district court granted summary judgment in favor of Derrig on all claims, based on qualified immunity.

O'Donnell now appeals, arguing: (1) the district court failed to view the evidence in the light most favorable to her in assessing the unlawful seizure claim; (2) the district court erred in concluding that there were no disputed facts as to the claim of deliberate indifference to her medical needs; and (3) this court's precedent applies the summary judgment standard in an unconstitutional manner.

## II. Standard of Review

Summary judgment is only appropriate when "there is no genuine issue as to any material fact and [] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "We review the trial court's grant or denial of a motion for

---

[1] The district court's order stated that O'Donnell "contends that most of her claims are 'subsumed' into her unlawful seizure claim. She now claims only unlawful seizure and deliberate indifference to medical needs." O'Donnell does not challenge this determination on appeal, and thus our discussion will be limited to these issues as well.

2

summary judgment <u>de novo</u>, viewing the record and drawing all reasonable inferences in the light most favorable to the non-moving party." <u>Patton v. Triad Guar. Ins. Corp.</u>, 277 F.3d 1294, 1296 (11th Cir. 2002). "The nonmovant need not be given the benefit of every inference but only of every reasonable inference." <u>Graham v. State Farm Mut. Ins. Co.</u>, 193 F.3d 1274, 1282 (11th Cir. 1999).

## II. Unlawful Seizure

In its order, the district court relied heavily on a videotape of the arrest, which was submitted as an exhibit to the motion for summary judgment. According to the district court, the video, "viewed in the light most favorable to O'Donnell," established the following:

> After stopping O'Donnell's car [for operating a vehicle with an inoperable license tag light], Derrig asked for her license and registration. She claimed not to have the car's registration, and Derrig then returned to his patrol car to write citations. Both the failure to have the registration in the car and the inoperable tag light are citable offenses in Florida. When Derrig returned to O'Donnell's car and asked her to get out of the car to sign the citations, O'Donnell refused. Eventually, she got out of her car, but still refused to sign the citations. Derrig warned O'Donnell that if she continued to refuse, he would arrest her. O'Donnell maintained her refusal to sign the citations, looked at the video camera and said, "This is ridiculous," then took a call on her cell phone.
>
> Derrig then reached for O'Donnell's arm but she pulled away and ran into the street. Derrig then grabbed O'Donnell, brought her to the hood of the patrol car, and tried to handcuff her. She resisted, screaming at Derrig, and at one point she bit Derrig. (<u>See</u> Pl.'s Dep. at 80.) After Derrig handcuffed O'Donnell, an ambulance arrived and the EMTs asked whether she needed to go to the hospital. She said no.

3

"[I]n order to receive qualified immunity, the public actor must prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." Kesinger v. Herrington, 381 F.3d 1243, 1248 (11th Cir. 2004). Once this has been demonstrated, "the burden shifts to the plaintiff to show that the official is not entitled to qualified immunity." Skop v. City of Atlanta, 485 F.3d 1130, 1137 (11th Cir. 2007). To satisfy her burden, the plaintiff must show that "(1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1264 (11th Cir. 2004). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Brosseau v. Haugen, 543 U.S. 194, 199 (2004) (quoting Saucier v. Katz, 533 U.S. 194, 202 (2001)). "[O]nly Supreme Court cases, Eleventh Circuit caselaw, and [state] Supreme Court caselaw can 'clearly establish' law in this circuit." Thomas ex rel. Thomas v. Roberts, 323 F.3d 950, 955 (11th Cir. 2003) (quotation and citation omitted).

Individuals have the right to be free from unreasonable seizures. Case v. Eslinger, 555 F.3d 1317, 1326 (11th Cir. 2009). "The 'reasonableness' of a seizure or arrest under the Fourth Amendment turns on the presence or absence of

4

probable cause."  Id.

It is undisputed that Derrig was acting within the scope of his discretionary authority when the alleged wrongful acts occurred.  The burden, therefore, shifted to O'Donnell to show that Derrig violated her clearly established constitutional rights.  The district court concluded that O'Donnell failed to meet this burden because "[a]n officer in Derrig's position could reasonably have believed that there was probable cause to arrest O'Donnell for refusal to obey a lawful police order . . . . Her refusal to sign a citation likewise gave Derrig probable cause to arrest her."

O'Donnell concedes that she was lawfully ordered to sign the citation and could be arrested for refusing to sign it.  O'Donnell contends, however, that the district court failed to construe the facts in the light most favorable to her because the videotape shows that at several points she stated her desire to sign the citation. Thus, O'Donnell argues that had the district court viewed the facts in the light most favorable to her, it would have concluded that she did not refuse to sign the citation, and therefore Derrig did not have probable cause to arrest her.

O'Donnell's recitation of the facts is, to say the least, quite selective. O'Donnell purports to accept the authenticity of the videotape and relies on it throughout her brief, but selectively omits certain portions of the tape from her discussion.  The videotape shows that after confirming the car's registration,

5

Derrig placed the citation pad on the hood of his police cruiser, approached O'Donnell's car, and asked her to exit the vehicle to sign the citation. O'Donnell initially refused, but subsequently exited the car. By O'Donnell's own admission, she then "exhibited marked annoyance and anger which was directed at the police officer." Derrig repeatedly asked O'Donnell to stand in front of his car, which was where the citation pad was located. O'Donnell yelled numerous times that she wanted to sign the citation, but despite Derrig's continuous requests, O'Donnell refused to stand in front of Derrig's car. Instead, she yelled for Derrig to "get me the thing," apparently wanting Derrig to retrieve the pad and deliver it to her. O'Donnell then directed statements towards the camera in Derrig's vehicle and fielded a cell phone call. Derrig nonetheless took out a pen, adjusted his citation pad (which remained on the hood of his vehicle), held the pen in front of the citation pad, and asked O'Donnell to stand in front of the vehicle. O'Donnell refused and walked to her car, ignoring Derrig's inquiry as to where she was going.

O'Donnell returned moments later and yelled at Derrig. After a brief argument, Derrig attempted to grab O'Donnell's arm and O'Donnell ran into the street. Derrig chased O'Donnell, seized her, and restrained her against the hood of the cruiser. For several seconds, Derrig attempted to handcuff O'Donnell's arms behind her back, at one point yelling for O'Donnell to "stop resisting." O'Donnell

6

replied, "I'm not resisting.  Motherf---er, I'll show you resisting," and then attempted to strike Derrig.  Derrig subdued O'Donnell on the pavement and handcuffed her.

When the videotape is viewed in its entirety, it is clear that O'Donnell, numerous times, disobeyed Derrig's lawful orders for her to sign the citation. Construing the evidence in the light most favorable to O'Donnell, she failed to demonstrate unlawful seizure because the arrest was supported by probable cause. The district court did not err in concluding that Derrig was entitled to summary judgment on this claim.

### III.  Deliberate Indifference to Medical Needs

O'Donnell next argues that the district court erred in concluding that Derrig was not deliberately indifferent to O'Donnell's medical needs.  The videotape clearly shows that following the arrest, an ambulance arrived to treat O'Donnell.  It is undisputed that O'Donnell spoke with an EMT and declined medical attention. O'Donnell contends that she did so because she assumed she was going to be released which, as the district court noted, was an unreasonable assumption considering the events that just transpired and that O'Donnell remained handcuffed while speaking with the EMTs.  Nonetheless, O'Donnell, citing her husband's deposition, argues that once she was in the police cruiser she decided that she

7

wanted to go to the hospital. O'Donnell allegedly voiced this request to Derrig, but Derrig did not turn around or acknowledge her statement.

"To prove a deliberate indifference claim, a plaintiff must show: (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." Danley v. Allen, 540 F.3d 1298, 1310 (11th Cir. 2008).

First, it is not clear that O'Donnell had a serious medical need because she declined medical treatment, reviewed and signed a document, and walked to the police cruiser under her own power. These actions are not consistent with the allegation that at the time O'Donnell was suffering from a "serious medical need." Burnette v. Taylor, 533 F.3d 1323, 1330 (11th Cir. 2008) (defining a "serious medical need" as "one that is diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would recognize the need for medical treatment"). Second, even assuming arguendo that O'Donnell had a serious medical need, there is no evidence that Derrig behaved with deliberate indifference to that need. O'Donnell rests her entire argument on her husband's testimony that even though Derrig did not acknowledge O'Donnell's alleged request for medical treatment, "I assume that he heard [it]." This is insufficient to establish a genuine issue of material fact as to whether Derrig displayed a deliberate indifference to

8

O'Donnell's alleged medical need. See Fed. R. Civ. P. 56(e) ("A supporting or opposing affidavit must be made on personal knowledge . . . ."); see also Pace v. Capobianco, 283 F.3d 1275, 1278-79 (11th Cir. 2002) ("[A]n affidavit stating only that the affiant 'believes' a certain fact exists is insufficient to defeat summary judgment by creating a genuine issue of fact about the existence of that certain fact."). As such, summary judgment on the deliberate indifference claim was appropriate.

## IV. Summary Judgment Standard

Finally, O'Donnell argues that this circuit's application of the summary judgment standard is unconstitutional. She contends that this court has improperly interpreted the question of whether there is a "genuine issue as to any material fact" by referencing to a "rational trier of fact." She argues that a court's "determination of what a 'rational' jury might do . . . in and of itself, is the resolution of a factual issue," which violates her Seventh Amendment right to a jury trial.

This argument warrants little discussion. The term "rational trier of fact" is not a creature of Eleventh Circuit caselaw, but rather a test expressly handed down by the United States Supreme Court. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) ("Where the record taken as a whole

could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"). We lack the authority to challenge the constitutionality of the Supreme Court's interpretation of federal law. See Hohn v. United States, 524 U.S. 236, 252-53 (1998).

**AFFIRMED.**