D.H., a minor by his mother Angela DAWSON, Plaintiff,

v.

CLAYTON COUNTY SCHOOL DIS-TRICT, Chief Kemuel Kimbrough, of the Clayton County Sheriff's Office, individually, Former Eddit White Academy Assistant Principal Tyrus McDowell, individually, Former School Resource Officer Ricky Red-ding, individually, Defendants.

Civil Action No. 1:12–CV–00478–AT.

United States District Court,
N.D. Georgia,
Atlanta Division.

Nov. 16, 2012.

Adam B. Wolf, Wolf Legal, San Francisco, CA, Craig Lewis Goodmark, Goodmark Law Firm, LLC, Decatur, GA, Gerald R. Weber, Law Offices of Gerry Weber, LLC, Atlanta, GA, for Plaintiff.

Brian R. Dempsey, Freeman Mathis & Gary, Atlanta, GA, Jack Reynolds Hancock, Freeman Mathis & Gary, LLP, Forest Park, GA, John C. Jones, Law Offices of John C. Jones, William F. Amideo, Law Office of William F. Amideo, Marietta, GA, Jacob Edward Daly, Freeman Mathis & Gary, Theodore Freeman, Freeman Mathis & Gary, Darren T. Horvath, Taylor English Duma LLP, for Defendants.

## *ORDER*

AMY TOTENBERG, District Judge.

This matter comes before the Court on Defendants Clayton County School District ("CCSD" or "the District") and Kemuel Kimbrough's motions to dismiss [Doc. 23, 17]. Plaintiff files this suit seeking relief under 42 U.S.C. § 1983, alleging the Defendants violated his constitutional rights under the Fourth and Fourteenth Amendments of the U.S. Constitution. Plaintiff also files suit for violations of his constitutional rights under the Constitution of Georgia. *See* Ga. Const. art I, § 1, paras. 13, 17; *Id.* art I, § 1, para. 1. Defendants move for dismissal, arguing that Plaintiff has failed to plead facts sufficient to support his asserted claims against them.

## I. STANDARD FOR MOTION TO DISMISS

■ This Court may dismiss a pleading for "failure to state a claim upon which relief can be granted." FED.R.CIV.P. 12(b)(6). A pleading fails to state a claim if it does not contain allegations that support recovery under any recognizable legal theory. 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1216 (3d ed. 2002); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). In considering a Rule 12(b)(6) motion, the Court construes the pleading in the nonmovant's favor and accepts the allegations

of facts therein as true. *See Duke v. Cleland,* 5 F.3d 1399, 1402 (11th Cir.1993). The pleader need not have provided "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). In essence, the pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937 (quoting *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955).

## II. BACKGROUND [1]

This case involves the constitutionality of a strip search conducted by school officials on a seventh grade boy in the presence of other students as well as adults. On February 8, 2011, school officials at Eddie White Academy suspected three students (R.C., D.V., and T.D.) of possessing marijuana on campus and strip searched each one. (Compl. ¶ 7.) When they found no contraband, R.C. falsely told School Resource Officer Redding that the plaintiff, D.H., and another student had marijuana. (*Id.* ¶ 8.)

After strip searching the other student, the school officials called D.H. into the vice principal's office, where School Resource Officer Redding, Vice Principal McDowell, and the three original suspected students were present. (*Id.* ¶ 9.) The school officials searched D.H.'s pockets and book bag, but did not find any marijuana. (*Id.* ¶ 10.) Mr. Collier then recanted his accusation that D.H. had marijuana, but Officer

Redding continued the search anyway. (*Id.* ¶¶ 11, 12.)

Vice Principal McDowell and Officer Redding proceeded with the strip search of D.H. (*Id.* ¶ 15.) They refused D.H.'s request that they conduct the strip search privately in the bathroom away from the other students. The school also did not contact D.H.'s family before conducting the strip search. (*Id.* ¶¶ 13, 14.) Plaintiff was required to take off all of his clothes—leaving him completely nude in front of Vice Principal McDowell, Officer Redding, and the other three students. (*Id.* ¶ 15.) School officials found no contraband. (*Id.*)

Before this incident, CCSD had conducted strip searches later found to be unconstitutional. (*Id.* ¶ 20.) Specifically, in *Thomas ex rel. Thomas v. Roberts,* 261 F.3d 1160 (11th Cir.2001), *vacated* 536 U.S. 953, 953, 122 S.Ct. 2653, 153 L.Ed.2d 829 (2002), *reinstated* 323 F.3d 950, 952 (11th Cir.2003), a group of schoolchildren sued CCSD, alleging they were subjected to unconstitutional strip searches. *Id.* at 1162. The Eleventh Circuit in *Thomas* affirmed the district court's holding that the searches were indeed unconstitutional. *Id.* at 1163. Since that time, CCSD officials and Police Chief Kimbrough allegedly failed to develop any new policies or procedures that instruct school officials on the kinds of searches they may conduct, (*id.* ¶¶ 22, 24–26), and failed to implement any training of staff on constitutional requirements for conducting searches. (*Id.*)

## III. ANALYSIS

### A. *Defendant Clayton County School District's Motion to Dismiss*

CCSD argues that Plaintiff's claims against it should be dismissed for failure to allege facts sufficient to support a constitu-

---

1. The factual background the Court describes below is based on the allegations in Plaintiff's complaint, which the Court construes in Plaintiff's favor consistent with the standard discussed above.

tional cause of action pursuant to 42 U.S.C. § 1983. CCSD argues that Plaintiff has not pled sufficient facts to establish the school district's liability for failure to train its officials to conduct searches in conformity with students' constitutional rights.[2] (Def. CCSD's Mot. Dismiss at 7.) Similarly, they argue that Plaintiff fails to allege facts sufficient to establish liability against the District based on a final decision-maker analysis. (*Id.* at 11.). Consequently, CCSD urges the Court to decline to exercise supplemental jurisdiction over Plaintiff's remaining state claims. (*Id.* at 15.)

 Plaintiff argues that he has pled sufficient facts to establish CCSD's liability. Plaintiff contends that the District and Chief Kimbrough failed to provide training to employees with responsibilities for conducting searches within the school, and strip searches in particular, consistent with constitutional requirements, although they were aware that these employees would regularly face situations requiring student searches and that strip searches would violate students' constitutional rights absent extraordinary circumstances. (Compl., ¶¶ 12, 24–26; Reply Br. at 5–11.) Further, Plaintiff argues that CCSD is liable because of the acts of Chief Kimbrough as a final decision-maker (Compl. ¶ 25). It also argues that Vice Principal McDowell acted as the final decision-maker on behalf of the District in determining to conduct the strip search as he maintained total discretion in executing the search and did not contravene any district policies in allowing the search to go forward. (Reply Br. at 12.)

### 1. Theory of Liability for Failure to Train

 In order to give rise to liability under 42 U.S.C. § 1983, a governmental

entity's "failure to train its employees in a relevant respect must amount to deliberate indifference to the [constitutional] rights of persons with whom the untrained employees come into contact." *Connick v. Thompson,* —— U.S. ——, 131 S.Ct. 1350, 1359, 179 L.Ed.2d 417 (2011) (quotation marks and brackets omitted). However, the government's "culpability for a deprivation of rights is at its most tenuous where a claim turns on failure to train." *Id.* Under the Eleventh Circuit's framework, a plaintiff must prove three elements in order to prevail on a § 1983 action for failure to train: "(1) the government inadequately trained or supervised its employees; (2) the failure to train is an official policy; and (3) the policy caused the employees to violate the plaintiff's rights." *Thomas,* 261 F.3d at 1173. Defendant argues that the Plaintiff cannot satisfy the second prong. (Def. CCSD's Mot. Dismiss at 8.)

 A plaintiff satisfies the second prong by proving "that a policy existed by showing that the government knew that a need to train or supervise its employees existed but made a deliberate choice not to take any action." *Thomas,* 261 F.3d at 1173 (citation omitted). A Plaintiff must also demonstrate that the Defendant was on notice of the need to train its employees by showing *either* of the following: "(1) the government's employees face clear constitutional duties in recurrent situations; or (2) a pattern of constitutional violations exists such that the government knows or should know that corrective measures are needed." *Id.* at 1173 (quotation marks omitted). As discussed further below, the Complaint alleges facts sufficient to support a record that CCSD was on notice

---

**2.** The District does not seek to dismiss Plaintiffs' claims against Defendants McDowell

and Redding in their individual capacities.

that it should have trained its employees with respect to conducting strip searches and deliberately chose not to take any action.

*a. The Complaint alleges facts that CCSD employees face clear constitutional duties in recurrent situations.*

Plaintiff alleges facts sufficient to support a claim that the search of students for contraband is a recurring event faced by school officials. In light of the need to search students in these kinds of situations, CCSD has issued a policy to guide school officials on when to search students. (Def. CCSD's Ex. A., Doc. 34–1.) However, this policy appears virtually the same in its material elements as the policy that was in place before the *Thomas* suit.[3] (Compl. ¶ 20); *see also Thomas v. Clayton County Board of Education,* 94 F.Supp.2d 1290, 1313–1314 (N.D.Ga.1999) (describing specific elements of CCSD's previous search policy). CCSD's search policy as well as the policies adopted by other school districts anticipate recurring situations when school officials will need to search students for contraband or evidence of "misconduct." (Def. CCSD's Ex. A at 1; Compl. ¶ 24.) CCSD's policy further anticipates that school officials will be required to determine the appropriateness of proceeding with a search and the scope of a search. (Def.'s Ex. A at 1.)

Neither the policy at issue in *Thomas* nor CCSD's current policy provides specific guidelines beyond the need for "reasonable suspicion." The Complaint alleges that despite the outcome of *Thomas,*

CCSD has not modified its search policy to require individualized suspicion as a condition of searches or to address and restrict "intrusive bodily searches for 'prohibited' items that present no safety danger or other immediate need." (Compl. ¶ 24.) According to the Complaint, this policy "is in sharp contrast with that of other local school districts, many of which bar strip searches or place sharp limitations which allow them only where student safety problems are imminent." (*Id.*) Thus, the Complaint alleges that the since the *Thomas* case, CCSD has allegedly taken "no corrective action ... in training or policy to prevent future similarly unconstitutional strip searches." (*Id.* ¶ 20.)

CCSD's search policy generically requires that its employees have "reasonable suspicion" and follow the law when searching students, but provides no other guidance. CCSD's policy specifies no criteria whatsoever to guide its employees in avoiding intrusive bodily searches that cross the line of constitutionality. Given the sequence of events alleged in the District, the CCSD policy's anticipation of the need to conduct student searches and the constitutional issues surrounding such searches, the Complaint alleges sufficient facts to support a plausible claim that CCSD's employees faced duties to conduct searches in conformity with the Fourth Amendment on a recurrent basis.

*b. The Complaint alleges sufficient facts to establish a pattern of constitutional violations by CCSD employees.*

Plaintiff argues that *Thomas* was sufficient to demonstrate that there has been a

---

**3.** CCSD filed a copy of what it contends is the school district's search policy in effect at the time of the incidents at issue in this case. (Doc. 34–1; Def. CCSD's Mot. Dismiss at 14.) The Court notes that the policy on its face indicates that it was issued on June 6, 2011 and revised on April 23, 2012 (Doc. 34–1 at 10), while the search incident here occurred months earlier, on February 11, 2011. The

Court has referred to this document because Plaintiff has not challenged its authenticity. Given these discrepancies, the Court obviously cannot be sure that this exact policy was in place in February, 2011. However, the policy's search provisions appear in substance to be consistent with the policy alleged in Plaintiff's Complaint and that at issue in *Thomas.*

pattern of unconstitutional strip searches in the District that have gone unaddressed. (Reply Br. at 9.) CCSD argues that *Thomas* was neither sufficient to put CCSD on notice nor to establish a pattern of violations. (Def. CCSD's Mot. Dismiss at 11.)

In *Thomas,* CCSD students were strip searched based on suspicion of theft of $26. Here, school officials strip searched D.H. for marijuana. CCSD's attempt to distinguish the facts of *Thomas* and the instant case is unavailing. Both student theft and possession of a small quantity of marijuana[4] might be charged as minor criminal offenses and be deemed a potential risk to students. Defendant's reliance on the putative distinctions between the relative dangers of alleged marijuana possession and theft within the school community misses the essential point here. *Thomas* put CCSD on notice that a strip search is a highly intrusive unconstitutional invasion of privacy except where supported by individualized suspicion and evidence that the activity poses "an extreme threat to school discipline or safety." *Id.* at 1169.

This lesson was strongly reinforced in 2009 by the Supreme Court's decision in *Safford Unified School District No. 1 v. Redding,* 557 U.S. 364, 129 S.Ct. 2633, 174 L.Ed.2d 354 (2009) approximately nineteen months prior to the events in this case. In *Safford,* the Court found that the "categorically extreme intrusiveness of a search down to the body of an adolescent" requires an exacting level of individualized suspicion tied to hard evidence of contra-

band possession and knowledge that an intrusive search of the intimate parts of the body will actually "pay off." *Id.* The mere spectre of a student's possession of contraband is insufficient to justify such an intrusive search.[5] *Id.*

CCSD argues that the single incident in *Thomas* was inadequate to establish a pattern of constitutional violations. (Def. CCSD's Mot. Dismiss at 10.) However, the pattern here is plausibly established by whether the past violations and Defendant's retention of essentially the same student search policy used in *Thomas* should have apprised the defendant of a need to train—as opposed to the volume of violations. *See Connick,* 131 S.Ct. at 1360 ("Policymakers' continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the 'deliberate indifference'—necessary to trigger municipal liability." (citation omitted)); *see also Am. Fed'n of Labor v. Miami,* 637 F.3d 1178, 1189 (11th Cir.2011) ("A plaintiff may demonstrate notice by showing a widespread pattern of prior abuse or even a single earlier constitutional violation." (quotation marks omitted)); *Sutton v. Utah State School for the Deaf and Blind,* 173 F.3d 1226, 1241 (10th Cir.1999) (holding that allegations of inaction after repeated reports of a child's victimization at school were sufficient to establish a failure to train in a single case).

In this case, Plaintiff alleges that CCSD's employees engaged in an uncon-

---

**4.** By the point Defendant officials conducted the strip search, they reasonably should have understood that the quantity of possible marijuana that could have been concealed in D.H.'s body or clothing was minimal.

**5.** As the Supreme Court noted in *Safford,* once the initial clothed search of the students

yielded no results, there was insufficient evidence upon which school officials could reasonably base their intrusive strip search, especially in the absence of any evidence of a practice among the students at the school of hiding contraband in their underwear. *Id.* at 376, 129 S.Ct. 2633.

stitutional search in a manner similar to or more egregious than the manner of the earlier search in *Thomas*, even after the Eleventh Circuit's ruling in *Thomas*, the Supreme Court's decision in *Unified School District No. 1 v. Redding* and other clearly relevant court rulings were issued. Plaintiff therefore contends that Defendants were deliberately indifferent to the need to train and supervise staff in handling constitutionally sensitive intrusive strip searches. (Compl. ¶¶ 18–26); *see also Foster v. Raspberry*, 652 F.Supp.2d 1342, 1351 (M.D.Ga.2009) ("*Thomas* put Defendants on notice that the search of [the plaintiff] violated [the plaintiff's] Fourth Amendment Rights."); *H.Y. v. Russell Cty. Bd. of Educ.*, 490 F.Supp.2d 1174, 1189 (M.D.Ala.2007).

The Court recognizes Defendant CCSD's argument regarding the time span between the events in *Thomas* and those occurring in the present case in February 2011. The Eleventh Circuit Court of Appeals issued *Thomas* in 2001. After the U.S. Supreme Court remanded the case for further consideration of immunity issues in 2002, *Thomas v. Roberts*, 536 U.S. 953, 122 S.Ct. 2653, 153 L.Ed.2d 829 (2002), the Court of Appeals affirmed the District Court's decision in 2003. *Thomas v. Roberts*, 323 F.3d 950 (11th Cir.2003). While the gap in time between the *Thomas* decision (and events therein) and the 2011 incident at issue here may prove important at summary judgment or trial, it is not dispositive at this initial stage of the litigation, given the specific sequence of events and legal decisions that transpired directly relevant to Plaintiff's claims.

Thus, Plaintiff has sufficiently alleged facts to support a viable claim that CCSD was on notice of its particular need to train district employees regarding the handling and legality of strip searches but made a deliberate decision not to do so, resulting in the violation of Plaintiff's constitutional rights. Plaintiff's Complaint, therefore, states viable Fourth and Fourteenth Amendment constitutional claims against the CCSD pursuant to 42 U.S.C. § 1983.

### 2. Theory of Liability Under Violation by Final Decision–Maker.

 Plaintiff alternatively maintains that CCSD may be held liable based on the acts and decisions of the district itself and of Chief Kimbrough as a final decisionmaker. (Compl. ¶ 25.) A public body may be held liable for a constitutional tort committed by an employee only when the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy" caused the harm. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). "Liability may be imposed for a single decision made by a government official, provided that the official possesses final authority to establish . . . policy with respect to the action ordered." *Thomas*, 261 F.3d at 1172 (citations and quotation marks omitted). In other words, to establish liability under a final decision-maker theory, the individual must have had such authority that her decisions and actions were effectively the policy of the public body.

Plaintiff's Complaint does not allege sufficient facts to support a claim that CCSD may be held liable under a final decision-maker theory. The Complaint makes the conclusory allegation that CCSD and Chief Kimbrough exercised final decision-making authority that would render CCSD liable for their decisions and actions. (Compl. ¶ 25.) On the other hand, Plaintiff's reply brief argues that Vice Principal McDowell held final decision-making authority, although this is not alleged in the Complaint. (Reply Br. at 5, 12.)

In *Thomas,* the Eleventh Circuit held that, "[w]hen an official's exercise of her discretionary duties is 'constrained by policies not of that official's making, those policies, rather than the subordinate's departures from them, are the act of the [local government].'" *Thomas,* 261 F.3d at 1173 (alteration in original) (emphasis added) (citing *St. Louis v. Praprotnik,* 485 U.S. 112, 127, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988)). According to the alleged facts, the school officials here, as in *Thomas,* were acting in violation of CCSD policy because they did not follow the law. Plaintiff argues that Defendant McDowell should be treated as a final decision-maker because his actions were not in contravention of the District's search policy as CCSD maintained no policy with respect to strip searches or when bodily searches could be conducted. (Compl. ¶ 24; Plaintiff's Response Br. at 12–14.) However, the distinction that Plaintiff urges here could have applied equally to the facts in *Thomas* and therefore provides an unpersuasive basis for departing from this binding precedent. Thus, consistent with the Eleventh Circuit's decision in *Thomas,* CCSD cannot be held liable under a theory that one of its administrators held final decision-making authority, since school administrators lacked the authority to change the policy, and the search in question was in violation of the policy's requirement that the search comply with "applicable authority." (Def. CCSD's Ex. A.)

The Complaint's allegations similarly fail to set forth specific facts that make clear why Plaintiff contends Chief Kimbrough exercised final decisionmaking authority *on behalf of the CCSD* with respect to the conduct of searches. The Complaint does not state precisely what actions Kimbrough took as a final decision-maker or what authority he maintained that would render CCSD liable for his actions. It does not allege that Chief Kimbrough was present at the strip search, that he directed that the strip search be performed, or in what manner he maintained final authority over the school district's search policy or its implementation. That said, the Complaint does allege that Chief Kimbrough was in the position to promulgate policy for the training and supervision of staff members such as School Resource Officer Redding, who would predictably implement student searches. (Compl. ¶¶ 22, 24–26) As Plaintiff has alleged some factual basis for its claim that Chief Kimbrough exercised final decision-making authority on behalf of CCSD—albeit an insufficient basis under *Iqbal* and *Twombly*—the Court grants Plaintiff leave to amend his Complaint to supplement the factual basis for his contentions regarding Defendant Kimbrough's actions, role, and authority as a final decision-maker on behalf of CCSD.

Finally, Plaintiff's Complaint alleges that CCSD itself was a final decisionmaker "over the policies, practices, customs, and procedures which were a moving force for the suspicionless strip searches of plaintiff and others." (Compl. ¶ 25.) The final decision-maker theory of liability provides a method for establishing local governmental liability where a final policy-maker vested with the ultimate decision making authority for the challenged action or policy has approved or implemented the unconstitutional action at issue. *Scala v. Winter Park,* 116 F.3d 1396, 1398–1403 (11th Cir. 1997). CCSD as a school district could potentially be held liable for the acts of any officials exercising final decision-making authority *on behalf of the district* with respect to the search policy and practices here. However, the district is itself not technically the final decision-maker under

§ 1983 jurisprudence.[6] Further, as CCSD actually maintained a policy that requires its employees to obey the law, it cannot be liable in a "decision-maker" capacity for the violation of the policy by an individual administrator who lacked the authority to modify the policy. *Thomas,* 261 F.3d at 1173. On the other hand, consistent with the requirements of Section III.A.1. above, CCSD can potentially be held liable based on proof that the district inadequately trained or supervised its employees who then violated Plaintiff's constitutional rights or failed to take requisite corrective measures to address a pattern of constitutional violations of which Defendant was on notice. *Id.*

### 3. Supplemental Jurisdiction and State Law Claims

CCSD argues that this Court should decline to exercise jurisdiction over Plaintiff's state law claims because it should dismiss the federal claim for failure to allege sufficient facts. (Def. CCSD's Mot. Dismiss at 15.) As stated above, this Court will not dismiss the federal claims against CCSD. As Plaintiff's claims have survived the motion to dismiss, this Court will exercise supplemental jurisdiction over the state law claims. *See* 28 U.S.C. § 1367(a) ("[T]he district courts shall have jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.").

■■■ CCSD asks this Court to require Plaintiff to submit a more definite statement in its pleadings regarding the state law claims against CCSD. (Def. CCSD'S Mot. Dismiss at 16); *see* Fed.R.Civ.P.

12(e). In response, Plaintiff states that he will not pursue claims based on paragraph 17 of the Georgia Constitution that Chief Kimbrough violated Plaintiff's right to be free from cruel and unusual punishment. (Reply Br. at 15.) However, Plaintiff argues that the claim based on the state constitution's right to privacy has been sufficiently alleged. (*Id.* at 15); *see also* Ga. Const. art. I, § 1, para. 1.

The Court finds that Plaintiff has pled sufficient facts to support a record that CCSD violated his right to privacy under the Georgia Constitution. The Supreme Court of Georgia established as early as 1905 that the Georgia Constitution provides a right to privacy, stating that "the body of a person cannot be put on exhibition at any time or at any place without his consent." *Pavesich v. New England Life Ins. Co.,* 122 Ga. 190, 50 S.E. 68, 70 (1905). The Complaint alleges sufficient facts to support a record that Plaintiff's right to privacy was infringed, as it states that Plaintiff was compelled to expose his nude body in front of five other people when Plaintiff did not consent to such a search and requested the search to be conducted in the privacy of a restroom. (Compl. ¶¶ 12, 13, 15, 16); *see also Thomas,* 261 F.3d at 1168 ("[T]here is no question that schoolchildren retain a legitimate expectation of privacy in their persons, including an expectation that one should be able to avoid the unwanted exposure of one's body, especially one's private parts." (quotation marks omitted)).

### B. Chief Kimbrough's Motion to Dismiss

Plaintiff contends that Chief Kimbrough violated his constitutional rights because

---

**6.** The Court has found no case law identifying a local governmental entity or school district itself as the final decision-maker. *See City of St. Louis v. Praprotnik,* 485 U.S. 112, 123, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988) (noting that

§ 1983 liability is based in part on "whether a particular *official* has final policymaking authority" (quotation marks omitted) (emphasis added)).

the Chief failed to train School Resource Officer Redding on the permissible bounds of strip searches in schools. (Compl., ¶ 22; Pl.'s Reply Br. at 19.) Chief Kimbrough moves to dismiss this claim, arguing that Plaintiff has not alleged sufficient facts to support a record for failure to train. (Def. Kimbrough's Br. at 5.)

### 1. Supervisory liability under § 1983

■ Supervisory officials can be held liable under § 1983 actions for constitutional violations on two grounds: "(1) the supervisor personally participates in the alleged constitutional violation, or (2) there is a causal connection between the actions of the supervisor and the alleged constitutional violation." *Gray v. Bostic,* 458 F.3d 1295, 1308 (11th Cir.2006). The Complaint does not allege that Chief Kimbrough participated in the strip search. Thus, Plaintiff must allege sufficient facts to support a record that there was a causal connection between his actions as a supervisor and the alleged constitutional violation.

■ A causal connection can be established in one of two ways: "(1) when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he or she fails to do so or (2) when a supervisor's improper custom or policy results in deliberate indifference to constitutional rights." *Doe v. School Bd. of Broward Cty. Fla.,* 604 F.3d 1248, 1266 (11th Cir. 2010) (quotation marks omitted). Plaintiff seems to rely on the first avenue to establish that Chief Kimbrough is liable for Officer Redding's violation of D.H.'s rights, (Compl. ¶¶ 22, 26; Reply Br. at 17), although his Complaint also makes allegations that might arguably fit the paradigm of the "custom or policy" method. (Compl. ¶¶ 22, 25–26)

■ To be sufficient to notify the supervisory official of the need to train,

"the abuse must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *Id.* (citation and quotation marks omitted). In *Doe,* the appellant sued her principal in his individual capacity when her teacher sexually assaulted her, arguing that he was liable as the teacher's supervisor. *Id.* at 1266. Before her assault, two other students complained of similar inappropriate contact with the same teacher. *Id.* The Eleventh Circuit concluded that the two prior complaints were not sufficient to create a "history of widespread abuse." *Id.* at 1267. The Court noted that this number was far less than the thirteen complaints that were sufficient to put the supervisor on notice for the need to train in *Valdes v. Crosby,* 450 F.3d 1231, 1241–43 (11th Cir.2006).

Plaintiffs Complaint does not make allegations regarding widespread abuse by School Resource Officers ("SROs") violating students' Fourth Amendment rights throughout Clayton County. There are no allegations that Chief Kimbrough received any complaints of SROs strip searching students in the Clayton County School District or the period of his employment. While the Complaint alleges that Chief Kimbrough failed to train Officer Redding on the boundaries of searching students (Compl. ¶ 26.), it does not allege that there was widespread, "obvious, flagrant, rampant, and continued" abuse of constitutional rights *by SROs* who were strip searching students in Clayton County. However, the Complaint might give rise to an inference that SROs are routinely charged with the responsibility and discretion for determining to proceed with strip searches or searches of any kind within the district. The Complaint's allegations do not expressly address this factual issue.

In the absence of any allegations that tie the routine responsibilities of school re-

source officers under Chief Kimbrough's supervision to the Plaintiff's allegations about the district as a whole and Officer Redding's conduct, Plaintiff's Complaint does not meet the standard set forth in *Doe*. Similarly, the Complaint's allegations do not provide the requisite factual detail to support a claim that Kimbrough individually as a supervisor maintained a custom or policy that resulted in deliberate indifference to the constitutional rights of students subject to searches or strip searches in particular. *Doe v. Sch. Bd. of Broward County, Fla.*, 604 F.3d 1248, 1267 (11th Cir.2010) (citing *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir.1999)). As the Court has granted Plaintiff leave to amend his Complaint with respect to Chief Kimbrough's role as a final decision maker, the Court will also permit Plaintiff to amend these allegations to clarify the factual basis of his claims against Chief Kimbrough in his individual supervisory capacity as well. If Plaintiff has an insufficient basis for asserting claims against Chief Kimbrough, he should not proceed with this amendment.

### 2. Qualified Immunity Analysis

Chief Kimbrough argues that he is immune to suit based on qualified immunity. Plaintiff argues that his right was sufficiently established such that qualified immunity should not apply. To analyze the availability of the qualified immunity defense, the court must determine both whether the plaintiff has alleged sufficient facts to make out a constitutional violation and whether the right as issue was clearly established at the time of the violation. *Pearson v. Callahan*, 555 U.S. 223, 232, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). The Court finds it premature to evaluate the qualified immunity defense here given its determination that Plaintiffs Complaint allegations against Defendant Kimbrough Complaint are insufficient and require

amendment for the Court to determine properly if Plaintiff states a viable claim against Kimbrough in his individual capacity.

### 3. Official Immunity and State Law Claims

Chief Kimbrough argues that he is entitled to official immunity for the claims under state law because Plaintiff has not alleged sufficient facts to show actual malice. (Def. Kimbrough's Mot. Dismiss at 13.) Plaintiff argues that Chief Kimbrough is not entitled to official immunity because the Complaint alleges sufficient facts to show actual malice. (Pl.'s Reply Br. at 23). Further, the Plaintiff argues that it is too early in litigation to secure more specific facts about Chief Kimbrough's decision-making until he can be deposed. (*Id.* at 24.) Again, as the Court has granted Plaintiff leave to amend his Complaint in connection with his claims against Chief Kimbrough, it is premature to rule on the Chief's assertion of the official immunity defense.

## IV. CONCLUSION

For the forgoing reasons, the Court **DENIES** Defendant CCSD's Motion to Dismiss [Doc. 23], consistent with the terms of this Order. The Court **GRANTS** Plaintiff leave to amend his Complaint with respect to his claims against CCSD based on Defendant Kimbrough's purported role as a final decision-maker, provided the amended complaint is filed on or before December 27, 2012. If Plaintiff files an amended complaint with respect to his claims against Defendant CCSD based on a final decision-maker theory, CCSD may within fourteen (14) days of the filing of the amended complaint renew its motion on this limited ground. As Plaintiff's federal constitutional claims against CCSD may proceed on the alternate grounds specified herein, Plaintiff's claims against CCSD

shall in any event proceed. Further, the Court **DENIES** CCSD's alternate motion for a more definite statement of Plaintiff's state law claims [Doc. 23 at 4].

The court **GRANTS** Plaintiff leave to amend his Complaint with respect to his federal and state claims against Defendant Kimbrough to cure the pleading deficiencies noted herein. If Plaintiff fails to file an amended complaint by December 27, 2012, the clerk is **DIRECTED** to resubmit Defendant Kimbrough's Motion to Dismiss [Doc. 17] to the undersigned and the Motion shall then be granted. If Plaintiff files an amended complaint with respect to his claims against Defendant Kimbrough, Mr. Kimbrough may file a renewed motion for dismissal of Plaintiffs claims within fourteen (14) days of the filing of the amended complaint.

The Court's Order of August 15, 2012 staying discovery is hereby **LIFTED.** However, Plaintiff may not conduct the deposition of Defendant Kimbrough until Defendant's time for filing a renewed motion for dismissal has expired.

The Parties shall file a proposed joint preliminary report and discovery plan no later than January 11, 2013.